## JANKEY v. ELLIS SILK HOSIERY CO.

### No. 9401.

District Court, E. D. Pennsylvania.

Oct. 7, 1936.

Samuel E. Ewing, Jr., and Earl G. Harrison, both of Philadelphia, Pa., for Mortgage Service Co. of Philadelphia.

Wm. D. Harkins and Gordon A. Block, both of Philadelphia, Pa., for Sidney E. Smith, receiver.

Louis E. Levinthal, of Philadelphia, Pa., for Ellis Silk Hosiery Co.

Bernard A. Illoway, of Philadelphia, Pa., for Mac M. Rothkopf.

MARIS, District Judge.

This is a rule entered on the petition of the Mortgage Service Company of Philadelphia against Ellis Silk Hosiery Company, its receiver Sidney E. Smith, Esq., Mac Rothkopf, purchaser at receiver's sale, Morris Ellis, owner of the mortgaged premises, and Associated Auctioneers, Inc., which conducted the receiver's sale, to show cause why a mortgage held by the petitioner on premises southeast corner Emerald and Westmoreland streets, Philadelphia, should not be paid before certain machinery on the premises which was sold at receiver's sale is removed. It appears that the Ellis Silk Hosiery Company had been engaged in the manufacture of ladies' full fashioned hosiery at the southeast corner of Emerald and Westmoreland streets, having occupied a portion of the mill building located at that point as the tenant of Morris Ellis, from the year 1931 to the date of the appointment of the receiver on April 27, 1936. This court on May 29, 1936, gave the receiver leave to sell the assets of the Ellis Silk Hosiery Company at public sale and pursuant thereto on June 25, 1936, a receiver's sale was held of the machinery, equipment, and merchandise located on the mortgaged premises.

No notice of the receiver's sale was given to the Mortgage Service Company, as it was not a creditor of the Ellis Silk Hosiery Company, its mortgage having been given on February 25, 1928, by Morris Ellis, who was then the owner of the premises and still remains as such. The sale was duly confirmed and the proceeds thereof were received by the receiver and have been largely distributed by him pursuant to the order of this court entered July 29, 1936. Certain of the machinery and equipment purchased by Mac Rothkopf was permitted to remain on the mortgaged premises under an agreement with the owner thereof, Morris Ellis. The receiver has, however, surrendered the lease and so far as he is concerned all of the machinery has been delivered to the purchaser. It appears, however, that on September 16,

1936, the petitioner, as mortgagee, took possession of the real estate and with it the machinery which had been sold by the receiver to Rothkopf and which had been permitted by the latter to remain pursuant to his agreement with the owner of the real estate, Morris Ellis. The petition of the Mortgage Service Company of Philadelphia on which the present rule was granted sets forth that the machinery and equipment purchased by Rothkopf are indispensable to the operation of the factory on the mortgaged premises and that under the terms of the mortgage said machinery and equipment are subject to the lien thereof. Petitioner seeks an order requiring the payment of its mortgage before any of the machinery and equipment remaining on the mortgaged premises is removed.

At the outset, I may say that there seems to me to be serious question as to whether the petitioner has chosen its proper remedy. On the record as it stands, it would appear that the receiver has performed all his functions and no longer has possession either of the machinery and equipment sold or of the proceeds of the sale. Associated Auctioneers, Inc., merely acted as auctioneer at the receiver's sale and have completed their services. Some question was raised by the petitioner as to the good faith of the sale, but I am satisfied from the evidence that the sale was bona fide and that Mac Rothkopf purchased the machinery and equipment in question in good faith for his own account. Morris Ellis, the record owner of the mortgaged premises, has now lost possession to the petitioner of both the real estate and the machinery and equipment still remaining therein. Consequently the controversy narrows down to one between the Mortgage Service Company, having possession of the machinery and equipment as mortgagee, and Mac Rothkopf, the purchaser thereof at the receiver's sale, who desires possession and who claims title thereto free of the lien of the mortgage. It would seem that an action of replevin by Rothkopf against the Mortgage Service Company would provide the proper remedy for this situation. However, in view of the fact that the receiver whose sale is in question has not been discharged and this court, therefore, retains jurisdiction, and since all parties have so requested, I will determine the question whether the lien of the mortgage covered the machinery and equipment sold at the receiver's sale.

The question whether or not equipment installed in a manufacturing plant has been incorporated in the real estate so as to become subject to the lien of a mortgage thereon is under Pennsylvania law primarily a question of intention and where, as here, there is no express provision in the mortgage on the subject, that intention is to be determined, not only from the mortgage, but from the surrounding circumstances as well. In re Highland Silk Co. (D.C.) 41 F.(2d) 404; Union Bldg. Co. of Pennsylvania v. Pennell (C.C.A.) 78 F.(2d) 959, 966; Ideal Building & Loan Ass'n v. Bateman (C.C.A.Third Circuit) 85 F.(2d) 961, decided September 22, 1936.

In the present case there was no evidence that the machinery had been so permanently affixed to or incorporated in the building as to make it necessarily part of the real estate, nor was there evidence that the mortgaged building was specially constructed to house the machinery; on the contrary, it appeared that the machinery was not installed until long after the building had been erected and the mortgage executed. It follows that the presumption of the mortgagor's intention to subject the machinery to the lien of the mortgage which was described by Kirkpatrick, J. in Re Highland Silk Co., supra, as "practically irrebuttable" does not arise in this case. It is equally clear for the same reason that this machinery and equipment is not indispensable to the operation of the mortgaged premises. On the other hand, it does appear that when the mortgage was executed the portion of the mortgaged premises here involved was occupied as tenant by the Unique Knitting Company, which was engaged in the business of manufacturing golf hose. That company vacated the premises on September 30, 1928, more than seven months after the mortgage was executed, and at that time removed all of its machinery and equipment from the building without any apparent objection by the mortgagee. The premises then remained vacant for a period, and afterwards the Ellis Silk Hosiery Company leased the basement, part of the first floor, and the second floor of the building which is described in the mortgage as "a four story factory or mill building," and between the years 1931 and 1935 installed the machinery and equipment in question therein. The Ellis Silk Hosiery Company was owned by Morris Ellis, the owner of the real estate, and his brother A. M. Ellis, but while Morris Ellis was the manager of the business he did not control it, since his brother owned a majority of the shares. There

was, therefore, no identity of interest between lessor and lessee. The conditions of the tenancy, so far as concerns the period after January 1, 1936, are set forth in a lease dated December 27, 1935, which contains the usual clause that any improvements or alterations made by the lessee shall become the property of the lessor. There was, however, no evidence as to the conditions of the tenancy during the period prior to January 1, 1936, when the machinery and equipment was being installed.

■ Considering these circumstances and the other evidence, I find that it was not the intention of the parties to incorporate into the real estate and so subject to the lien of the mortgage the machinery installed in the building by the Ellis Silk Hosiery Company. I, therefore, conclude that the machinery and equipment here in question is not subject to that lien and that the petitioner in this case has no claim thereto.

In reaching this conclusion I have considered the principles laid down by the Circuit Court of Appeals for the Third Circuit in Ideal Building & Loan Association v. Bateman, supra, but I do not believe that they are applicable to the situation here disclosed. In that case the American Pile Fabric Company was the tenant whose machinery and equipment were claimed by the mortgagee. It appeared that the Fabric Company, which had occupied certain land and buildings as tenant, decided to purchase them and in order to do so its stockholders organized the Tremont Realty Company, which purchased the premises and leased them to the Fabric Company. The officers and directors of both companies were the same, and the stock ownership was largely the same. The machinery and equipment had all been installed long before the mortgage in question was executed by the Tremont Company, and that mortgage in express terms covered the machinery and fixtures. The tenant had full knowledge of this fact. The lease from the Tremont Company to the Fabric Company contained the provision that all alterations, partitions, additions, or improvements, made by either party, except movable office furniture other than partitions, put in at the expense of the tenant should be the property of the landlord. It also contained an express provision that certain equipment was the property of the tenant and should be removable by the tenant. The lease also provided that it was subject to any mortgage which might at any time be placed upon the premises. It further appeared in that case that at least a part of the machinery in question had been installed in a building specially constructed for it. From these facts the Circuit Court of Appeals concluded that the machinery and equipment in question, although installed by the Fabric Company, were nevertheless subject to the lien of the mortgage executed by the Tremont Company.

Where a landlord and tenant are substantially identical in interest, and the mortgage executed by the landlord with the knowledge of the tenant expressly subjects to its lien the machinery and equipment installed by the tenant, part of which was installed in buildings specially constructed therefor, the intention of the parties to incorporate the machinery into the real estate and subject it to the lien of the mortgage is clearly discernible, and this is especially so where the lease itself provides that all alterations, additions, and improvements made by the tenant except certain furniture and machinery shall be the property of the landlord. In the present case, however, none of the foregoing circumstances existed. The landlord and tenant were not substantially identical in interest. The mortgage did not contain any express provision subjecting the machinery and equipment to its lien and it does not appear that any of the machinery or equipment was installed in specially constructed buildings. On the contrary, it was all installed long after the mortgage had been created. Nor does it appear that the lease in force when the machinery was installed contained any provisions making additions and improvements the property of the landlord. The present case is, therefore, distinguishable on its facts from Ideal Building and Loan Ass'n v. Bateman, supra. It is also distinguishable from Union Bldg. Co. of Pennsylvania v. Pennell, supra, since in that case it appeared that the buildings leased by the tenant were specially constructed for a grocery warehouse and bakery to be operated by the tenant. The plans and specifications were designed with that end in view, and all the machinery, equipment, and apparatus were particularly adapted and installed to carry out the work and business of a warehouse and bakery, and when installed, these fixtures became an "essential part of the construction necessary in conducting the business for which the structure was erected." Under the circumstances, the Circuit Court of Appeals

held that the presumption arose and became practically irrebuttable that it was the intention of the lessee in putting the chattels into the buildings that they should become a part of the realty.

In the present case it appears that the building was designed and erected for general manufacturing purposes, that it has been occupied from time to time by various manufacturing tenants, some of whom at least have been permitted to remove their machinery without objection by the mortgagee, that the tenant whose equipment is now in question did not come in until long after the mortgage was executed, and then only occupied a portion of the building. I do not think under such circumstances that a clause in a lease providing that alterations and improvements to the premises made by the lessee should become the property of the lessor would be of itself sufficient to indicate an intention to subject the lessee's machinery and equipment to the lien of a mortgage created by the lessor long before. To so hold would be to extend the law beyond the decision of any case which I have found. In the present case, however, there is no evidence as to the provisions of the lease in force during the period the machinery was installed. Consequently, this question is not in the case. The lease which was offered in evidence covering the period from January 1, 1936, did have such a clause in it, but it has no bearing on the case, since it appeared that all of the machinery had been installed prior to that time.

Rule discharged.